FILED

2019 JUN 17 PM 4:34

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No: 2:19-cv-408-FtM-38UAM

$80,000.00 IN UNITED STATES CURRENCY,

    Defendant.

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States of America brings this complaint and alleges upon information and belief as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $80,000 in United States currency seized from Daniel DE LA CRUZ PAGAN's truck on January 13, 2018 (Defendant Funds).

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to:

    a. 28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Middle District of Florida; and

    b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the Defendant Funds were found and seized in this district and the acts or omissions giving rise to the forfeiture occurred in this district.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6. The Defendant Funds consist of approximately $80,000 seized by law enforcement officers on January 13, 2018 from underneath the bedliner of Daniel DE LA CRUZ PAGAN's truck in Naples, Florida.

7.  As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

8.  The Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

9.  The facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by Drug Enforcement Administration (DEA) Special Agent Christopher Murray, who states as follows:

## FACTS

10.  In December 2017, law enforcement received information from a source of information (SOI) that Daniel DE LA CRUZ-PAGAN was distributing cocaine throughout Southwest Florida.[1] The SOI stated that DE LA CRUZ-

---

[1] On December 29, 2017, law enforcement seized one kilogram of cocaine from the SOI's residence. The cocaine's wrapping was imprinted with a spider. The SOI has since been prosecuted and sentenced in connection with the offense.

3

PAGAN would "front" the SOI cocaine (on consignment) and the SOI would contact DE LA CRUZ-PAGAN when the SOI had money to pay for the cocaine. DE LA CRUZ-PAGAN would then collect the money from the SOI. Based upon your Affiant's training and experience, it is common practice for drug traffickers to "front" drugs to trusted customers, with the expectation that the trafficker would be compensated once the drugs were sold.

11. The SOI stated that DE LA CRUZ-PAGAN drove a white Toyota Tundra pickup truck.

12. On December 29, 2017, the SOI informed law enforcement that the SOI had been in contact with DE LA CRUZ-PAGAN the previous day to arrange for DE LA CRUZ-PAGAN to deliver cocaine to the SOI. It was also discussed that the SOI would pay DE LA CRUZ-PAGAN for previously delivered cocaine. Law enforcement checked, and the phone call was listed on the SOI's cellular telephone call history which showed a call with "Dan" (phone number 239-231-5672) on December 28, 2017. Additionally, an unanswered call was received from "Dan" on the SOI's telephone on December 29, 2017 at approximately 1:30 P.M.

13. Later on December 29, 2017, at approximately 1:45 P.M., the SOI made a recorded call to "Dan" at (239) 231-5672 in the presence of law enforcement. The call was in Spanish. In summary, during this call, "Dan" asked the SOI if everything was okay because he heard that the SOI had a problem at his house. The SOI stated that he was not home, but would check in and get back to him.

Additional attempts to call "Dan" at this number were unsuccessful and it appeared that "Dan's" telephone was either turned off or no longer in operation. It is common for drug traffickers to abandon, or "drop", cellular phones when the drug trafficker believes that one of their associates may have been arrested or come under the scrutiny of law enforcement.

14. On January 7, 2018, DE LA CRUZ-PAGAN went to the SOI's residence and asked the SOI about the circumstances surrounding the police activity at the SOI's residence the week prior. The SOI convinced DE LA CRUZ-PAGAN that the police activity at the SOI's residence was not related to drug activity, and that the SOI wanted to continue working with DE LA CRUZ-PAGAN. DE LA CRUZ-PAGAN gave the SOI his new telephone number, (727) 256-7207, and agreed to provide the SOI with cocaine when the SOI was ready. DE LA CRUZ-PAGAN stated, however, that he would not bring the cocaine to the SOI's residence. Instead, DE LA CRUZ-PAGAN told the SOI that the SOI would have to go the Mel's Diner in Bonita Springs, Florida to receive the cocaine.

15. On January 8, 2018, DE LA CRUZ-PAGAN called the SOI to confirm that the SOI would be ready to take delivery cocaine sometime that week. Additionally, DE LA CRUZ-PAGAN told the SOI that he checked with his boss in Orlando and was given permission to continue supplying the SOI with cocaine.

16. On the morning of January 9, 2018, agents with the DEA conducted surveillance of DE LA CRUZ-PAGAN at his residence and observed him leave in

his white Toyota Tundra. DE LA CRUZ-PAGAN travelled to a warehouse located at 1447 Rail Head Blvd., Naples, FL.

17. On January 11, 2018, at approximately 10:45 A.M., the SOI made a recorded call to DE LA CRUZ-PAGAN at (727) 256-7207. The call was in Spanish. The conversation was consistent with the arranging of a drug transaction. During this call, the SOI indicated that the SOI had money he owed DE LA CRUZ-PAGAN. The SOI also stated, "I'm ready, bring me the five plus one more that I have extra money for, and I want the ones with the spider on them." The SOI was asking DE LA CRUZ-PAGAN to bring kilograms of cocaine that had a spider imprint on the wrapping. This same imprint was on the kilogram of cocaine seized by law enforcement from the SOI's residence on December 29, 2017. DE LA CRUZ-PAGAN responded, "Ok, I'll have to sort through them and see how many of those I have left." The two then agreed to meet at between 2:30 P.M. and 3:00 P.M. at the pre-arranged location of Mel's Diner, located at 28601 Trails Edge Blvd., Bonita Springs, Florida, to conduct the drug transaction.

18. Twenty-five minutes later, at approximately 11:10 A.M., a white Chevrolet truck occupied by two males was observed leaving DE LA CRUZ-PAGAN's residence. The vehicle traveled to 1447 Rail Head Blvd., Naples, Florida, and went to the west end of the warehouse. The two men took objects from the warehouse and put them into the white Chevrolet pickup truck.

19. The two individuals left the warehouse in the Chevrolet truck, and agents continued surveilling the truck. The Chevrolet truck was followed by surveillance units and the vehicle began "cleaning" itself almost immediately. "Cleaning" is a term for a counter-surveillance technique in which a person makes unnecessary turns and engages in sometimes erratic driving, in order to ascertain whether they are being followed. Narcotics traffickers sometimes "clean" themselves in an effort to see if anyone is following them when engaging in narcotics-related activity. Surveillance units followed the white Chevrolet pickup to the Taco Bell restaurant located at 28370 Trails Edge Blvd. in Bonita Springs, Florida. Surveillance later lost contact with the Chevrolet for a period of time, and it is unknown what the occupants of the vehicle did during that time

20. At approximately 11:20 A.M. (still on January 11, 2018), DE LA CRUZ-PAGAN was observed leaving his residence in his white Toyota Tundra. Surveillance followed DE LA CRUZ-PAGAN to a nearby Toyota dealership. At approximately 11:34 A.M., DE LA CRUZ-PAGAN left the Toyota dealership and traveled southbound on US-41. At approximately 11:55 A.M., DE LA CRUZ-PAGAN arrived at Gianluca's Italian restaurant located at 696 6th Ave. N., Naples, FL. At approximately 1:00 P.M., DE LA CRUZ-PAGAN left the restaurant and almost immediately began to "clean" himself before parking in a parking lot across the street. For the next several hours, DE LA CRUZ-PAGAN engaged in counter-surveillance techniques before ultimately returning to the restaurant.

21. At approximately 3:30 P.M. (still on January 11, 2018), agents in vehicles that were surveilling DE LA CRUZ-PAGAN were approached by members of the Naples Police Department. Members of the Naples Police Department explained that DE LA CRUZ-PAGAN had telephoned the police department stating that vehicles had been following him since he left his house in the morning. DE LA CRUZ-PAGAN wanted to know if they were police vehicles. At approximately 4:00 P.M., surveillance of all locations was terminated.

22. On January 13, 2018, a court authorized search warrant was executed on 1447 Rail Head Blvd., Unit # 2, Naples, Florida. During the search of the unit, approximately $80,000 was found hidden underneath the bedliner of the tailgate of a white Toyota Tacoma pickup truck located in the unit. Drug traffickers commonly conceal bulk currency in order to transport the funds without detection by law enforcement. A bill of sale was found inside the pickup truck listing the purchaser as Daniel DE LA CRUZ-PAGAN of 677 109 Ave. N., Naples, FL.

23. On January 13, 2018, DE LA CRUZ-PAGAN was interviewed. DE LA CRUZ-PAGAN stated that he was the lessee of 1447 Rail Head Blvd. Unit #2, Naples, FL, and he claimed ownership of the Toyota Tacoma pickup truck that was found inside of the warehouse. DE LA CRUZ-PAGAN denied, however, knowledge or ownership of the $80,000 found in the vehicle. DE LA CRUZ-PAGAN was asked what his current phone number was, and he provided the cellular telephone number (239) 290-1473.

24. The Florida Department of Revenue has no reported wages being earned in Florida by DE LA CRUZ-PAGAN since January 1, 2009.

25. Based on the totality of the circumstances, probable cause exists to believe that the Defendant Funds are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CONCLUSION

26. As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 88I(a)(6).

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Funds; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Funds be forfeited to the United States for disposition according to law; and

that the United States have such other and further relief as this case may require.

Dated: June 17, 2019

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: _s/Charles D. Schmitz_
CHARLES D. SCHMITZ
Assistant United States Attorney
USAO No. 159
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
E-mail: charles.schmitz@usdoj.gov

By: _s/James A. Muench_
JAMES A. MUENCH
Assistant United States Attorney
Florida Bar Number 472867
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000 – telephone
E-mail: james.muench2@usdoj.gov

## **VERIFICATION**

I, Christopher Murray, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Drug Enforcement Administration, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the Drug Enforcement Administration, the Collier County Sheriff's Office, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 17 day of June, 2019.

_____
CHRISTOPHER MURRAY
Special Agent
Drug Enforcement Administration